UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ELECTRICAL MANUFACTURERS ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA ENERGY COMMISSION, <br><br> Defendant. | No. 2:17-CV-01625-KJM-AC <br><br> ORDER |

Plaintiff, National Electrical Manufacturers Association (NEMA), sues defendant California Energy Commission (CEC), claiming federal law preempts CEC's regulation of efficiency standards for three categories of light bulbs (or "lamps"). NEMA has moved for judgment on the pleadings, requesting the court declare the California regulations preempted by federal law and enjoin CEC from enforcing the regulations. As explained below, the court DENIES NEMA's motion for judgment on the pleadings.

I. BACKGROUND

    A. Statutory Background

This motion involves provisions of the Energy Policy and Conservation Act (EPCA). 42 U.S.C. § 6291 *et seq.* Congress drafted EPCA as a comprehensive national energy policy designed to "reduce domestic energy consumption through the operation of specific

1

voluntary and mandatory energy conservation programs." *Nat. Res. Def. Council, Inc. v. Herrington*, 768 F.2d 1355, 1364 (D.C. Cir. 1985) (quoting S. Rep. No. 516, 94th Cong, 1st Sess. 116–17 (1975)). To achieve this design, EPCA included measures to improve the energy efficiency of several home appliances. Today, the Secretary of the Department of Energy (DOE) is responsible for establishing test procedures and for setting and enforcing energy conservation standards for "covered products" within the Act's framework. *See* 42 U.S.C. §§ 6293, 6295(a), 6303–04.

As of 1992, the Secretary's responsibilities have included regulating light bulbs, or "lamps." Pub. L. No. 102-486, 106 Stat. 2776, 2824 (1992). Over a decade later, the Energy Policy Act of 2005 established standards for compact fluorescent lamps. Pub. L. No. 109-58, 119 Stat. 594 (2005); 42 U.S.C. § 6291(30)(BB)(i)(II). Two years after that, Congress expanded the scope of light bulbs subject to EPCA's framework in a rewrite of EPCA that created the regulatory term "general service lamps" (GSLs). *See* Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492 (2007) (EISA). EISA set, or authorized DOE to set, efficiency standards for GSLs, and also defined GSLs to include three enumerated categories of light bulbs and authorized the Secretary to further define GSLs. 42 U.S.C. § 6291(30)(BB)(i)(I)–(IV). Today, DOE has explained that GSLs are light bulbs that "provide[] an interior or exterior area with overall illumination." *Energy Conservation Program: Energy Conservation Standards for General Service Lamps, Final Rule*, 82 Fed. Reg. 7276, 7302, 7321 (Jan. 19, 2017) (to be codified at 10 C.F.R. pt. 430).

One of the enumerated categories of GSLs is called "general service incandescent lamps," or GSILs. 42 U.S.C. § 6291(30)(BB)(i)(I). In 2007, Congress adopted efficiency standards for GSILs and other types of GSLs and directed DOE to determine whether standards for GSILs and other lamp types should be adopted or amended. DOE promulgated a final rule in 2017 as a result, expanding the definition of GSLs and GSILs but declining to "impose or amend standards for any category of lamps, such as GSILs or GSLs." 82 Fed. Reg. at 7276–77, 7300, 7312. DOE is still seeking data "to assist DOE in making a determination regarding whether standards for GSILs should be amended." *Energy Conservation Program: General Service*

2

*Incandescent Lamps and Other Incandescent Lamps Request for Data*, 82 Fed. Reg. 38,613, 38,616 (proposed Aug. 15, 2017).

EPCA contains a general preemption provision. 42 U.S.C. § 6297. Section 6297(b), a "[g]eneral rule of preemption for energy conservation standards before Federal standard becomes effective for product," provides:

> Effective on March 17, 1987, and ending on the effective date of an energy conservation standard established under section 6295 of this title for any covered product, no State regulation, or revision thereof, concerning the energy efficiency, energy use, or water use of the covered product shall be effective with respect to such covered product, unless [a specific congressional exception applies.]

42 U.S.C. § 6297(b).

Under EPCA, Congress required DOE to conduct a rulemaking process, beginning "[n]o later than January 1, 2014," that evaluates standards for GSLs and exemptions "for certain incandescent lamps." 42 U.S.C. § 6295(i)(6)(A)(i). Congress specified four requirements of the rulemaking process:

> **(i) In general**
>
> Not later than January 1, 2014, the Secretary shall initiate a rulemaking procedure to determine whether--
>
> > **(I)** standards in effect for general service lamps should be amended to establish more stringent standards than the standards specified in paragraph (1)(A); and
> >
> > **(II)** the exemptions for certain incandescent lamps should be maintained or discontinued based, in part, on exempted lamp sales collected by the Secretary from manufacturers.
>
> **(ii) Scope**
>
> The rulemaking--
>
> > **(I)** shall not be limited to incandescent lamp technologies; and
> >
> > **(II)** shall include consideration of a minimum standard of 45 lumens per watt for general service lamps.
>
> **(iii) Amended standards**
>
> If the Secretary determines that the standards in effect for general service incandescent lamps should be amended, the Secretary shall publish a final rule not later than January 1, 2017, with an effective

> date that is not earlier than 3 years after the date on which the final rule is published.
>
> **(iv) Phased-in effective dates**
>
> The Secretary shall consider phased-in effective dates under this paragraph considering--
>
>> **(I)** the impact of any amendment on manufacturers, retiring and repurposing existing equipment, stranded investments, labor contracts, workers, and raw materials; and
>>
>> **(II)** the time needed to work with retailers and lighting designers to revise sales and marketing strategies.

42 U.S.C. § 6295(i)(6)(A).

EPCA has a "backstop requirement" for this rulemaking that triggers "[i]f the Secretary fails to complete a rulemaking in accordance with clauses (i) through (iv) or if the final rule does not produce savings that are greater than or equal to the savings from a minimum efficacy standard of 45 lumens per watt." 42 U.S.C. § 6295(i)(6)(A)(v). In either of those situations, "the Secretary shall prohibit the sale of any general service lamp that does not meet a minimum efficacy standard of 45 lumens per watt," beginning on January 1, 2020. *Id*.

EPCA also provides express exceptions to federal preemption in connection with the 2014 rulemaking. These exceptions trigger when the Secretary has not adopted a "final rule . . . in accordance with clauses (i) through (iv)." 42 U.S.C. § 6295(i)(6)(A)(vi)(I). In that instance, California or Nevada may adopt, effective "on or after January 1, 2018 . . . the backstop requirement under clause (v)," noted above. *Id.* § 6295(i)(6)(A)(vi)(II). Additionally, California is entitled to adopt, effective on or after January 1, 2018, "any California regulations relating to these covered products adopted pursuant to state Statute in effect as of December 19, 2007." *Id.* § 6295(i)(6)(A)(vi)(III).

CEC has adopted state regulations for three categories of light bulbs: GSLs, light emitting diode (LED) lamps and small diameter directional lamps (SDDLs). Cal. Code Regs., tit. 20, § 1602(k). CEC has applied a "backstop" standard of 45 lumens per watt to GSLs manufactured on or after January 1, 2018. *Id*. CEC set more stringent energy efficiency standards for LED lamps under two tiers of standards, one effective January 1, 2018, and the

other effective July 1, 2019. *Id.*, Table K-14. CEC also established separate standards for SDDLs in this same rulemaking. *Id.* (defining SDDLs based on meeting five criteria).

B. Procedural History

NEMA has sued CEC, filing a verified complaint alleging EPCA preempted CEC's regulations through express and conflict preemption, with no applicable exception. Compl. at 14–15, ECF No. 1. In its complaint, NEMA requests: (1) declaratory judgment that "CEC's energy efficiency standards for State-Regulated LED lamps, State-Regulated SDDLs, and State-Regulated GSLs" are preempted through express and conflict preemption without an applicable exception; and (2) a "permanent injunction against the CEC from enforcing the above three energy efficiency standards." *Id.* at 16. NEMA then filed a motion for judgment on the pleadings, advancing the allegations in its complaint. Mot. at 1–20, ECF No. 13. CEC filed an opposition, contending preemption exceptions allow its proceeding in all three regulated categories and its LED lamp and SDDL regulations do not impliedly conflict with the federal statutory scheme. Opp'n at 1, 9–18, ECF No. 22. NEMA has filed a Reply, responding in part that no preemption exceptions are available because the Secretary was not required to publish a final rule for GSIL standards. Reply at 5–7, ECF No. 28.

II. LEGAL STANDARD

A. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, taking all allegations in the [non-movant's] pleading as true, the moving party is entitled to judgment as a matter of law." *Merchs. Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir. 1995) (citing *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993)). A Rule 12(c) motion is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Harris v. Ventyx Inc.*, No. S-11-308 FCD/GGH, 2011 WL 3584498, at *2 (E.D. Cal. Aug. 12, 2011) (citing *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 528–29 (9th Cir. 1997)). In other words, a court should not grant a 12(c) motion unless the movant clearly establishes that no

disputed issues of material fact remain to be resolved. *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996) (quoting *Yanez v. United States*, 63 F.3d 870, 872 (9th Cir. 1995)); *see also Fajardo v. Cty. of Los Angeles*, 179 F.3d 698, 701 (9th Cir. 1999) (reversing district court's grant of a Rule 12(c) motion because the parties disputed material facts).

While generally, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d), and the court may "consider certain materials without converting the motion for judgment on the pleadings into a motion for summary judgment. Such materials include . . . matters of judicial notice." *Tumlinson Group, Inc. v. Johannessen,* No. 2:09–cv–1089, 2010 WL 4366284, at *3 (E.D. Cal. Oct. 27, 2010) (internal citations omitted); *see also Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir. 2001) (holding court may properly take judicial notice of "matters of public record" without converting to summary judgment motion).

B. <u>Statutory Interpretation</u>

When construing a statute, the court looks first to the plain language of the statute to determine whether it is clear and unambiguous, as such language must ordinarily be regarded as conclusive. *United States v. Alvarez–Sanchez,* 511 U.S. 350, 356 (1994); *see I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 432 n.12 (1987) (observing a "strong presumption that Congress expresses its intent through the language it chooses"). If the language is plain, no further construction of the statute is required, for there is nothing to construe. *Id.; see also Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43 (1984). Where the plain language of the statute appears to settle the question, the court looks to legislative history "to determine only whether there is 'clearly expressed legislative intention' contrary to that language, which would require [the court] to question the strong presumption that Congress expresses its intent through the language it chooses." *Cardoza–Fonseca,* 480 U.S. at 432 n.12 (citation omitted).

If a statute's terms are ambiguous, courts may "look to other sources to determine congressional intent, such as the canons of construction or the statute's legislative history." *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008) (citing *Jonah R. v. Carmona*, 446 F.3d

1000, 1005 (9th Cir. 2006)). At the same time, courts must be cautious in relying on legislative history to divine Congressional intent: the use of legislative history can be akin to "entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring)

In clarifying congressional intent, the court may also look to the interpretation of the statute by the agency charged with its administration. *Brock v. Writers Guild of Am., W., Inc.*, 762 F.2d 1349, 1353 (9th Cir.1985). An agency's interpretation is entitled to deference so long as the agency's interpretation "is based on a permissible construction of the statute." *See Chevron*, 467 U.S. at 843. "When a statute is ambiguous or leaves key terms undefined, a court must defer to the federal agency's interpretation of the statute, so long as such interpretation is reasonable." *Peck v. Cingular Wireless, LLC,* 535 F.3d 1053, 1056 (9th Cir. 2008) (citing *Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*, 423 F.3d 1056, 1067 (9th Cir. 2005)). An agency's interpretation of a statute is permissible unless "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. "[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001). Otherwise, an agency interpretation of a statute is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), deference that "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."

III. DISCUSSION

    A. Preemption

The Constitution declares the laws of the United States "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This provision is the basis for the doctrine that federal law "preempts" state law where the two conflict. Federal regulations that an agency adopts according to statutory

authority may preempt state law just as completely as federal statutes. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less preemptive effect than federal statutes).

Preemption can be express. *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368 (1986) (express preemption exists "when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law") (citation omitted). Preemption also can be implicit in the federal statute's text or operation. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). Courts find implicit preemption when federal and state laws conflict, in the form of conflict preemption, or if the federal statute's scope indicates Congress intended federal law to occupy the legislative field, in the form of field preemption. *Id.* Here, NEMA has not asserted that field preemption applies, but rather relies on express and implied conflict preemption *See* Mot. at 12–20.

To carve out limitations to an express preemption clause, the court must identify the precise domain the express language preempts. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009). "[T]he plain wording of the clause [ ] necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Express preemption provisions vary in strength and specificity.

Conflict preemption "exists where 'compliance with both state and federal law is impossible,' or where 'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1595 (2015) (quoting *California v. ARC America Corp.*, 490 U.S. 93, 100, 101 (1989)).

B.    <u>Presumption Against Preemption</u>

Generally, as a starting point, there is a presumption against preemption. *Cipollone*, 505 U.S. at 516 ("Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress.") (citation, internal quotation marks, ellipses, and brackets omitted). However, the presumption against preemption

8

does not apply to state laws regulating "an area where there has been a history of significant federal presence." *United States v. Locke,* 529 U.S. 89, 108 (2000). Furthermore, "there is no authority for invoking the presumption against pre-emption in express pre-emption cases." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 102 (2008); *Arizona v. United States*, 567 U.S. 387, 400 (2012) (finding no presumption against preemption where Congress makes its intent to supersede state law "clear and manifest").

NEMA contends the presumption against preemption does not apply here in light of the express preemption provisions in ECPA. Mot. at 13, 16–17. CEC contends the presumption against preemption applies, relying on Ninth Circuit case law and a "history of significant state presence for . . . appliance efficiency standards," especially for California. Opp'n at 9–10. NEMA replies that Ninth Circuit case law actually reaches the opposite conclusion for energy efficiency standards; it says the express preemption provision of ECPA precludes a presumption against preemption; courts accord weight to agency interpretation; and no historic police powers of the state are at issue here. Reply at 2–4.

Here, the presumption against preemption does not apply because ECPA contains an express preemption provision. *See* 42 U.S.C. § 6297; *Atay v. Cty. of Maui*, 842 F.3d 688, 699 (9th Cir. 2016). Furthermore, the Ninth Circuit has previously concluded that the "legislative history" of the EPCA and its related acts "demonstrate[] that Congress intended to preempt state energy standards, testing procedures, and consumer labeling requirements." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 499 (9th Cir. 2005) (interpreting provisions of 42 U.S.C. § 6297); *see also Air Conditioning, Heating & Refrigeration Inst. v. City of Albuquerque*, 835 F. Supp. 2d 1133, 1136–37 (D.N.M. 2010) (referring to § 6297 as a "broad preemption provision" and relying on use of the word "concerning" to reason that Congress intended the preemption provision "to be broad in scope").

DOE's own interpretation in the final rule adopted January 19, 2017 removes any doubt as to the inapplicability of the presumption against preemption. DOE has characterized the exceptions to "EPCA's statutory preemption provision" as "narrow." 82 Fed. Reg. at 7316; *see*

*also id.* at 7319 ("EPCA governs and prescribes federal preemption of state regulations as to energy conservation for the products that are the subject of this final rule.").

CEC's reliance on a history of significant state presence for appliance efficiency standards is undercut by the federal government's decades of involvement in regulating appliance efficiency standards since passage of EPCA in 1975. However, Congress also has recognized California's vanguard role in energy efficiency, providing statutory exceptions to preemption for California, as discussed below.

C. <u>Exceptions to Preemption</u>

Although EPCA contains an express preemption provision, NEMA still must show as a matter of law that the statutory exceptions to preemption, located at 42 U.S.C. § 6295(i)(6)(A)(vi), do not apply to CEC's regulations. NEMA contends CEC is not entitled to these exceptions because the DOE Secretary has complied with the rulemaking requirements of § 6295(i)(6)(A)(i)–(iv): "Since 2013, the Secretary has been engaged in rulemaking to implement the congressional directives to determine whether to set new standards and revise the definition of GSLs." Mot. at 11 (citing 78 Fed. Reg. 73,737 (Dec. 9, 2013)). NEMA points to DOE's publication of a final rule expanding the definitions for GSLs. 82 Fed. Reg. 7276. It says, therefore, none of the exceptions to preemption in § 6295(i)(6)(A)(vi) applies to CEC's regulations.

CEC contends, on the other hand, "DOE did not adopt a final rule in accordance with clauses (i) through (iv) because it did not adopt the final rule described in clause (iii) of 42 U.S.C. § 6295(i)(6)(A) (the final rule requirement)." Opp'n at 11. NEMA replies that the obligation to issue a final rule under clause (iii) by January 1, 2017 "is only triggered '[i]f the Secretary determines that the standards in effect for [GSILs] should be amended." Reply at 6 (citing 42 U.S.C. § 6295(i)(6)(A)(iii)).

An Amicus Brief in support of CEC's position contends DOE failed to satisfy clause (i) of § 6295(i)(6)(A). Amicus Br. at 7–8, ECF No. 25. The court granted leave to file this brief. ECF No. 24. In the brief, amici assert "the rulemaking procedure [DOE] initiated in December 2013 did nothing to inform a determination whether standards for [GSILs] should be

10

amended (as required in sub-clause (I)) or whether exemptions for incandescent lamps should be maintained or discontinued (as required in sub-clause (II))." *Id.* at 7 (footnote omitted).

NEMA is correct that clause (iii) requires a final rule by January 1, 2017 only if the Secretary determines that GSIL standards should be amended. Properly read, the plain language of the statute requires the Secretary to find first "that the standard in effect for [GSILs] should be amended" before imposing an obligation on the Secretary to "publish a final rule no later than January 1, 2017." 42 U.S.C. § 6295(i)(6)(A)(iii). The use of the word "[i]f" does not impose a duty on the Secretary to make a determination at all. This reading is consistent with multiple other EPCA provisions that expressly impose a mandatory duty on the Secretary to publish a rule by a certain date. For instance, § 6295(i)(3) states, "Not less than 36 months after October 24, 1992, the Secretary shall initiate a rulemaking procedure and shall publish a final rule not later than the end of the 54-month period beginning on October 24, 1992, to determine if the standards established under paragraph (1) should be amended." Multiple other sections contain this mandatory language requiring the Secretary to actually publish a rule in addition to initiating a rulemaking procedure. *E.g.*, 42 U.S.C. § 6295(i)(4)–(5); *id.* § 6295(d)(3)(A), (e)(4)(A)–(b), (f)(4)(A).

However, not one of these other examples addresses exceptions to preemption for the rulemaking procedure required. And here, NEMA bears the burden in moving for judgment on the pleadings of establishing as a matter of law that DOE has satisfied all four clauses of the EPCA provisions at issue, in adopting the final rule it has published. Otherwise, California may be entitled to the preemption exceptions provided under § 6295(i)(6)(A)(vi).

NEMA has directed the court to multiple explanations by DOE that it was not required to publish a final rule by January 1, 2017 because DOE had not yet determined GSIL standards needed amendment. Mot. at 11, 18 (citing 82 Fed. Reg. at 7277, 38,614). Although these DOE explanations support NEMA's argument that the clause (iii) deadline of January 1, 2017 did not apply to DOE's published final rule, the explanations do not tell the whole story. Rather, the Secretary must adopt "a final rule . . . in accordance with clauses (i) through (iv)" to preclude California from exercising exceptions to preemption at § 6295(i)(6)(A)(vi). Based on

11

the record before the court, NEMA has not established as a matter of law that the final rule adopted on January 19, 2017, is "in accordance with" clauses (i)–(iv).  That CEC does not advance arguments based on clauses (i), (ii) or (iv) in its opposition, and has conceded that the Secretary satisfied § 6295(i)(6)(A)(i) in its Answer, does not alleviate NEMA's burden as the movant.  *See* Answer ¶ 36, ECF No. 11 (admitting DOE Secretary has met the requirement to initiate rulemaking by January 1, 2014 to determine whether to amend standards in place for GSLs and to address definitional issues).  Nor does CEC's decision not to advance some arguments alleviate the court of its duty to interpret the statute at issue in this case.  *See Romero-Mendoza v. Holder*, 665 F.3d 1105, 1107 (9th Cir. 2011) ("Questions of law include . . . pure issues of statutory interpretation . . . .") (quoting *Retuta v. Holder*, 591 F.3d 1181, 1184 (9th Cir. 2010)).

1. <u>A Final Rule "in Accordance with" Clauses (i) Through (iv)</u>

Clause (i) requires DOE to "initiate a rulemaking procedure" by January 1, 2014 "to determine whether" GSL standards "should be amended to establish more stringent standards" and to determine whether "exemptions for certain incandescent lamps should be maintained or discontinued."  42 U.S.C. § 6295(i)(6)(A)(i)(I)–(II).  NEMA directs the court to DOE's "initiating this rulemaking and data collection process to consider new and amended energy conservation standards for products included in the definition of general service lamps (GSLs)."  78 Fed. Reg. at 73,737 (Dec. 19, 2013); *see* Mot. at 18.  But a question remains whether DOE actually initiated this rulemaking, especially when DOE has repeatedly indicated that it was not able to undertake the analysis required by clause (i).  *See* U.S. Dept. of Energy, *Energy Conservation Standards Rulemaking Framework Document for General Service Lamps*, at 11 (Dec. 2, 2013)[1] (observing that a congressional appropriations rider "appears to curtail any further activity to implement or

---

[1] Available at https://www.regulations.gov/document?D=EERE-2013-BT-STD-0051-0002. The court takes judicial notice of the existence of this document under Federal Rule of Evidence 201(b)(2) as a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See Preciado v. Wells Fargo Home Mortgage*, No. 13–00382, 2013 WL 1899929, at *3 (N.D. Cal. May 7, 2013) (taking judicial notice of "information obtained from a governmental website").

enforce standards for GSILs" and DOE therefore "will not be including [GSILs] in the GSL rulemaking at this time"); Consol. Appropriations Act, 2012, Pub.L. No. 112–74 § 315, 125 Stat. 786, 879 (the appropriations rider); *see also Energy Conservation Program: Energy Conservation Standards for General Service Lamps*, 81 Fed. Reg. 14528, 14540 (proposed Mar. 17, 2016) ("Due to the Appropriations Rider, DOE is unable to perform the analysis required in clause (i) of 42 U.S.C. 6295(i)(6)(A)."). DOE's own statements from December 2, 2013 through March 17, 2016 cast doubt on NEMA's claim that DOE actually initiated the prescribed rulemaking procedure when it lacked the funds to conduct the required analysis.

Moreover, it is the "final rule" that must be "in accordance with" clauses (i)–(iv) to preclude the preemption exceptions' availability to California. 42 U.S.C. § 6295(i)(6)(A)(vi). DOE's final rule explicitly disclaims any analysis of clause (i), subclause (I): "This final rule does not determine whether DOE should impose or amend standards for any category of lamps, such as GSILs or GSLs." 82 Fed. Reg. at 7277. In addressing comments about DOE's proposed rulemaking and now-final rule, DOE "disagrees that a rule defining GSLs is improper without an analysis of hypothetical-DOE imposed standards." *Id.* at 7283. More specifically, according to DOE, "[t]his final rule adopts a definition of GSL, as well as related definitions. DOE is not addressing proposed standards in this final rule." *Id.* at 7316. In issuing the final rule it did, DOE concluded that the appropriations rider did not prevent DOE from defining "what constitutes a GSIL and what constitutes a GSL under [§] 6295(i)(6)(A)(i)(II), an exercise distinct from establishing standards." *Id.* at 7288.

On this record, the court cannot conclude as a matter of law that DOE's final rule is "in accordance with" clause (i), much less clauses (i)–(iv). DOE has disclaimed addressing standards from before the deadline to initiate the rulemaking through publication of the final rule. DOE has acknowledged that its analysis and rulemaking under clause (i)(II), addressing incandescent lamp exemptions, is distinct from the rulemaking in which it has engaged under clause (i)(I), determining whether "standards in effect for [GSLs] should be amended to establish more stringent standards." 42 U.S.C. § 6295(i)(6)(A)(i)(I).

13

The court also doubts the final rule is "in accordance with" clause (ii) of § 6295(i)(6)(A). Although DOE's final rule addressed technologies other than "incandescent lamp technologies," as required by subclause (I), the court cannot conclude as a matter of law that the rulemaking's scope included "consideration of a minimum standard of 45 lumens per watt for [GSLs]." *Id.* § 6295(i)(6)(A)(ii)(II). DOE's decision not to consider standards as part of its final rule necessarily entails a decision not to consider the "minimum standard of 45 lumens per watt for [GSLs]" as required by subclause (II) of § 6295(i)(6)(A)(ii). As DOE stated in the final rule, "Lamps that are GSLs will become subject to either a standard developed by DOE or to a 45 lm/W backstop standard, but this rule does not determine what standard will be applicable to lamps that are being newly included as GSLs." 82 Fed. Reg. at 7318.

Even clause (iv) requires "considering . . . the impact of any amendment . . . ." 42 U.S.C. § 6295(i)(6)(A)(iv)(I). This "amendment" could refer to the use of "amended" in clause (i)(I), addressing GSL standards, or in clause (iii), addressing GSIL standards. *Id.* § 6295(i)(6)(A); *see Commissioner of Internal Revenue v. Lundy*, 516 U.S. 235, 250 (1996) ("[I]dentical words used in different parts of the same act are intended to have the same meaning.") (internal citations and quotation marks omitted). Regardless, because DOE did not consider amending standards for GSLs or GSILs in its final rule, DOE could not have considered the impact of amendment in its final rule as required by clause (iv).

NEMA maintains not only that clause (iii) did not require DOE to amend standards for GSILs by January 1, 2017, but also that clauses (i) through (iv) do not require publication of a final rule by that date. Reply at 1. NEMA justifies this position by referencing DOE's August request for data on GSILs after publishing its final rule in January. Reply at 7; *see* 82 Fed. Reg. at 38,613. According to NEMA, this request for data on GSILs shows that NEMA has not yet made a determination whether GSIL standards should be amended. Thus, DOE remains free to pursue "determining whether to amend GSIL standards, as demonstrated by the August 2017 Request for Data . . . ." Reply at 7.

Other portions of the record reveal that the Secretary has not "complete[d] a rulemaking in accordance with clauses (i) through (iv)." 42 U.S.C. § 6295(i)(6)(A)(v). In its

14

final rule, DOE "acknowledges comments regarding the proposed standards for GSLs, and will address them at such time as standards may be finalized." 82 Fed. Reg. at 7316. Any such final rule would have to have an effective date of no later than January 1, 2020, the same date the backstop requirement would trigger. *See* 42 U.S.C. § 6295(i)(6)(A)(v). At oral argument, NEMA maintained that DOE could still publish a final rule amending GSIL standards despite the passage of the January 1, 2017 deadline.

But NEMA's position that DOE can publish a final rule amending GSL or GSIL standards any time before January 1, 2020 and still preclude California from exercising the preemption exceptions under § 6295(i)(6)(A)(vi) would lead to an absurd result. *See, e.g., United States v. Granderson*, 511 U.S. 39, 47 n.5 (1994) (dismissing interpretation said to lead to absurd result). Here, were DOE able to wait to publish a final rule, then the multiple preemption exceptions available to California "effective beginning on or after January, 2018" would serve no purpose. Specifically, permitting California or Nevada to adopt "the backstop requirement under clause (v)" would be mere surplusage in light of the backstop requirement triggering on its own "effective beginning January 1, 2020." 42 U.S.C. § 6295(i)(6)(A)(v), (vi)(II). The Ninth Circuit has "long followed the principle that statutes should not be construed to make surplusage of any provision." *United States v. Mohrbacher*, 182 F.3d 1041, 1050 (9th Cir. 1999) (citing *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 833–34 (9th Cir. 1996)). "[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) (citation omitted). Additionally, NEMA's position that DOE could still publish a final rule amending GSIL standards would render Congress's requirement of three years' lead time for lamp manufacturers to adapt to the new standards without purpose or effect. *See* 42 U.S.C.§ 6295(i)(6)(A)(iii).

When interpreting a statute, the court examines "not only the specific provision at issue, but also the structure of the statute as a whole . . . ." *Wilson v. Comm'r*, 705 F.3d 980, 988 (9th Cir. 2013) (citations and internal quotation marks omitted). Here, § 6295, when read as a whole, contemplates DOE's publishing a final rule in accordance with clauses (i) through (iv) before the January 1, 2020 backstop requirement would trigger, or by January 1, 2017 if that final

15

rule would amend GSIL standards. The preemption exception permitting California regulations with an effective date as early as January 1, 2018 reflects a deadline for DOE to publish a final rule in accordance with clauses (i) through (iv) before California may adopt its own regulations or adopt the backstop requirement two years early. 42 U.S.C. § 6295(i)(6)(A)(vi)(I)–(III). Clause (iv) requiring DOE to "consider phased-in effective dates" contemplates effective dates for a final rule that would occur before the backstop requirement takes effect—a phased-in effective date after the January 1, 2020 backstop requirement deadline would fail to "produce savings that are greater than or equal to the savings from a minimum efficacy standard of 45 lumens per watt" necessary to prevent the backstop requirement from triggering. Although clause (iii) might only require a final rule by January 1, 2017 "[i]f" GSIL standards need to be amended, reading § 6295(i)(6)(A) as a whole precludes a conclusion that DOE has up to January 1, 2020 to complete a final rulemaking when it has not yet begun to address standards for GSLs.

Because NEMA has not established as a matter of law that the Secretary has adopted a final rule "in accordance with clauses (i) through (v)," the court cannot foreclose the possibility that exceptions to preemption under § 6295(i)(6)(A)(vi) apply to CEC's regulations. *Cf. United States v. Hovsepian*, 359 F.3d 1144, 1161 (9th Cir. 2004) (holding that an agency loses jurisdiction when "the statute at issue requires that the agency act within a particular time period *and* the statute specifies a consequence for failure to comply with the time limit" (emphasis in original)).

### 2. Available Exceptions

If preemption exceptions are available under § 6295(i)(6)(A)(vi), then the first exception available to California is "the backstop requirement under clause (v)." 42 U.S.C. § 6295(i)(6)(A)(vi)(II). Under its regulations, CEC has adopted the backstop requirement of 45 lumens per watt for GSLs manufactured on or after January 1, 2018. Cal. Code Regs., tit. 20, § 1602(k).

The second exception available to California allows "any California regulations relating to these covered products adopted pursuant to State statute in effect as of December 19, 2007." 42 U.S.C. § 6295(i)(6)(A)(vi)(III). NEMA contends this exception permits California to

"revive" its "energy conservation regulations in effect for GSILs" on December 19, 2007. Reply at 12–13. To achieve this reading, NEMA divides the exception into three separate phrases, each one modifying the word "regulations": "relating to these covered products," "adopted pursuant to State statute" and "in effect as of December 18, 2007." *Id.* at 13. CEC on the other hand contends the phrase "in effect as of December 19, 2007" applies to the words immediately preceding it: "State statute." Opp'n at 2, 7, 16. The statute in effect as of December 19, 2007 was California Public Resources Code § 25402. *See* Cal. Pub. Res. Code § 25402(c)(1) (2003) (current version at Cal. Pub. Res. Code § 25402 (2008)).

The plain language of this exception controls the analysis. The California regulations must be "adopted pursuant to State statute in effect as of December 19, 2007." 42 U.S.C. § 6295(i)(6)(A)(vi)(III). The words "State statute" are those most closely associated with the "in effect as of December 19, 2007" limitation. NEMA's interpretation would require the court to read in commas, and introduce the word "and" after "State statute," to create the list of phrases NEMA contends modifies the word "regulations." Additionally, NEMA's interpretation would render the phrase "adopted pursuant to State statute" mere surplusage. Had Congress intended to permit only those California regulations in effect as of December 19, 2007, Congress would have had no need to mention a state statute. Instead, Congress could have written "any California regulations relating to these covered products in effect as of December 19, 2007." But Congress did not choose that language, and the court must "give effect to each word if possible." *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (internal quotation marks, alterations, and citation omitted). Thus, if preemption exceptions are available to California, § 6295(i)(6)(A)(vi)(III) authorizes CEC regulations of LED lamps and SDDLs.

D. <u>Implied Conflict Preemption</u>

NEMA claims "CEC's standards for [LED lamps] and . . . SDDLs are not only expressly preempted . . . but they are also invalid under principles of conflict preemption." Mot. at 15. CEC contends there is no conflict because "there are no federal standards for LEDs or [SDDLs]" and CEC regulations "are consistent with Congress's objectives." Opp'n at 17–18.

17

To demonstrate implied conflict preemption, NEMA must show that it is impossible to comply with both federal and state requirements or that the state law stands as an obstacle to Congress's objectives. *Sprietsma v. Mercury Marine*, 537 U.S. 51, 65 (2002); *Whistler Invsts., Inc. v. Depository Tr. & Clearing Corp.*, 539 F.3d 1159, 1164 (9th Cir. 2008) ("Congress's intent to preempt state law is implied to the extent that federal law actually conflicts with any state law.").

NEMA has not shown that it is impossible to comply with both federal and state requirements as a matter of law. First, as DOE has acknowledged, "DOE is not addressing proposed standards in th[e] final rule." 82 Fed. Reg. at 7316. DOE has not yet published any standards that could conflict with CEC regulations. Second, "[n]either section 6297(b) [the preemption provision] nor any other provision of law shall preclude" California from exercising the preemption exceptions available when DOE fails to adopt a final rule in accordance with clauses (i) through (iv). 42 U.S.C. § 6295(i)(6)(A)(vi). Because the court must give effect to each word if possible, the addition of "nor any other provision of law" to EPCA's express preemption provision indicates a preemption exception broader than an exception only for express preemption. *Compare id.* § 6295(i)(6)(A)(vi), *with Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 869 (2000) (finding a savings clause that says "[c]ompliance with" a federal safety standard "does not exempt any person from any liability under common law" did not "suggest[] an intent to save state-law tort actions that conflict with federal regulations").

NEMA's argument that CEC regulations "would also conflict with DOE's discretion to decide *not* to set nationwide standards," Mot. at 16 (emphasis in original), lacks merit. DOE has not set standards for GSLs or GSILs at all in its final rule while continuing to request data for assessing GSIL standards; this decision does not amount to an actual determination not to amend standards. *Compare Sprietsma*, 537 U.S. at 67–68 (finding no preemption where decision not to regulate "d[id] not convey an 'authoritative' of a federal policy against" such regulation), *with Whistler Investments*, 539 F.3d at 1168 (finding plaintiff's claim preempted when that claim involved a "direct challenge to [agency]-approved rules").

Nor has NEMA shown that CEC regulations are an obstacle to Congress's objectives. Congress's stated purposes include "conserv[ing] energy supplies through energy conservation programs" and "provid[ing] for improved energy efficiency of . . . certain . . . consumer products." 42 U.S.C. § 6201(4)–(5); *see Air Conditioning*, 410 F.3d at 498–99 ("EPCA was designed, in part, to reduce the United States' 'domestic energy consumption through the operation of specific voluntary and mandatory energy conservation programs.'") (citing S. Rep. No. 94-516, at 117). NEMA has not shown that CEC regulations imposing energy efficiency standards under preemption exception provisions create an obstacle to Congress's objectives of conserving energy and improving energy efficiency. Even the possibility that DOE might choose less stringent standards than California's, if and when it does publish a final rule addressing GSL and GSIL standards, may not present an obstacle to Congress's objectives. *See Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 720 (1985) (rejecting a concern that challenged ordinances imposed "requirements more stringent than those imposed by the federal regulations, and therefore . . . present[ed] a serious obstacle to the federal goal" as "too speculative to support pre-emption"). Concerns about patchwork regulations are minimal because California is the only state permitted to implement its own regulations beyond adopting the backstop requirement. *Compare* 42 U.S.C. § 6295(i)(6)(A)(vi)(II)–(III), *with Air Conditioning*, 410 F.3d at 500 (discussing the reason for broader preemption standards under 42 U.S.C. § 6297 "to counteract the systems of separate state appliance standards that had emerged as a result of DOE's 'general policy of granting petitions from States requesting waivers from preemption'") (citing S. Rep. No. 100-6, at 4).

Ultimately, NEMA fails to show a conflict between federal and state standards or an obstacle to Congress's objectives where CEC has exercised a preemption exception provided by the statute itself. *See Smith v. Anastasia Inc.*, No. 14-CV-1685-H-MDD, 2014 WL 12577598, at *3 (S.D. Cal. Sept. 15, 2014) (finding state statute "d[id] not impliedly conflict with a federal law that expressly saves it from preemption").

E.  SDDLs as Covered Products Under EPCA

CEC also contends SDDLs are not covered products under EPCA, and DOE's final rule would only establish some SDDLs as covered products when the rule becomes effective on January 1, 2020. Opp'n at 14–15. NEMA concedes that some SDDLs do not fall under EPCA and "are not the subject matter of this dispute." Mot. at 8 n.11. Because NEMA fails to show express or implied preemption, the court need not address the contended status of other SDDLs as covered products under EPCA at this stage.

IV. CONCLUSION

For the foregoing reasons, the court DENIES NEMA's motion for judgment on the pleadings.

IT IS SO ORDERED.

DATED: December 21, 2017.

_____
UNITED STATES DISTRICT JUDGE